**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
Eastern Division**

| | |
|---|---|
| WILLIAM FAMBROUGH, | |
| *Plaintiff*, | Civil Case No. 1:22-cv-00992-BMB |
| v. | |
| THE CITY OF EAST CLEVELAND, OHIO; MAYOR BRANDON KING, in his individual capacity; CHIEF OF POLICE SCOTT GARDNER, in his individual capacity; LAW DIRECTOR WILLA HEMMONS, in her individual capacity; ASSISTANT LAW DIRECTOR HEATHER McCOLLOUGH, in her individual capacity; OFFICER MARK ALLEN, in his individual capacity; CAPTAIN KENNETH LUNDY, in his individual capacity; OFFICER ANDREW MAJERCIK, in his individual capacity; OFFICER WILLIAM NEVELS, in his individual capacity; OFFICER KYLE WOOD, in his individual capacity; and JOHN DOES I-X, | Judge Bridget Meehan Brennan
Magistrate Judge Thomas M. Parker |
| *Defendants*. | |

---

**PLAINTIFF'S BRIEF IN RESPONSE TO THE COURT'S JANUARY 30, 2023 ORDER**

---

# TABLE OF CONTENTS

BACKGROUND ..........................................................................................................1

ISSUES AND SUMMARY OF ARGUMENT ........................................................2

ARGUMENT ............................................................................................................3

    I.  Defendants Hemmons And McCollough May Not Effectively Or Ethically Represent Other Defendants, And They Both Can And Will Be Fact Witnesses ...............................3

        A.  Hemmons's and McCollough's Status As Necessary Fact Witnesses Creates A Conflict That Precludes Them From Representing Other Defendants ........................4

        B.  Hemmons's And McCollough's Representation Of Both Themselves And Their Co-Defendants Creates Additional Conflicts....................................................6

        C.  These Conflicts Have Already Led To Identifiable Improprieties In This Case That Have Prejudiced Plaintiff.................................................................9

    II.  The *Rooker-Feldman, Heck*, And *Nieves* Doctrines Do Not Apply To Or Bar Any Of William's Claims ...............................................................................12

        A.  *Rooker-Feldman* Does Not Apply To This Suit Because It Does Not Ask This Court To Review Any State Court Decision.........................................12

        B.  *Heck* Does Not Apply To This Case.........................................................15

            1.  *Heck* does not apply to a case like this where the plaintiff was never imprisoned and never had a habeas remedy available to him.................................................15

            2.  Independently, *Heck* does not apply to a case like this that does not challenge the validity of any convictions...........................................................16

        C.  Nieves Does Not Apply To William's First Amendment Retaliation Claim .............17

            1.  *Nieves* applies only to retaliatory *arrests*.............................................17

            2.  Even if *Nieves* applied outside the arrest context, it still would not apply to William's First Amendment retaliation claim ......................................19

CONCLUSION.........................................................................................................20

CERTIFICATE OF COMPLIANCE.......................................................................22

# TABLE OF AUTHORITIES

**Cases**                                                                                   **Page(s)**

*Arrington v. City of Los Angeles*,
  No. 16-56755, 2021 WL 4168156 (9th Cir. Sept. 14, 2021) ...........................................15

*Arrington v. City of Los Angeles*, Pet. For Writ of Cert.,
  No. 22-64, 2022 WL 2954785 (U.S. July 21, 2022).........................................................15

*Behr v. Campbell*, 8 F.4th 1206 (11th Cir. 2021) ..............................................................14

*Berry v. Schmitt*, 688 F.3d 290 (6th Cir. 2012)............................................................12, 13

*Carrero v. Farrely*, 280 F. Supp. 3d 774 (D. Md. 2017)......................................................8

*Cummings v. City of Akron*, 418 F.3d 676 (6th Cir. 2005) .............................................15, 16

*Eng'g & Mfg. Servs., LLC v. Ashton*,
  No. 07-cv-689, 2011 WL 13238209 (N.D. Ohio Sept. 9, 2011) .......................................9

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005) .........................12, 14

*Farnhurst, LLC v. City of Macedonia*,
  No. 13-cv-668, 2015 WL 6758223 (N.D. Ohio Nov. 5, 2015)....................................6, 7, 9

*Glazer v. Reimer, Arnovitz, Chernik & Jeffrey, Co.*,
  No. 09-cv-1262, 2015 WL 13932929 (N.D. Ohio Nov. 2, 2015).....................................5, 6

*Gordon v. Norman*, 788 F.2d 1194 (6th Cir. 1986) .........................................................6, 8

*Gordon v. Phillip*, No. 21-cv-29, 2022 WL 973833 (M.D.N.C. Mar. 31, 2022)................4, 5, 6, 8

*Graves v. Mahoning Cnty.*, 534 F. App'x 399 (6th Cir. 2013)................................................14, 15

*Heck v. Humphrey*, 512 U.S. 477 (1994)........................................................2, 3, 12, 15, 16, 17

*Ingram v. City of Columbus*, 185 F.3d 579 (6th Cir. 1999).....................................................14, 15

*Kitchen v. Aristech Chem.*, 769 F. Supp. 254 (S.D. Ohio 1991) .......................................9

*Lance v. Dennis*, 546 U.S. 459 (2006)........................................................................12, 14

*Lawrence v. Welch*, 531 F.3d 364 (6th Cir. 2008) ...........................................................12

*Leather v. Ten Eyck*, 180 F.3d 420 (2d Cir. 1999)............................................................15

ii

*Lozman v. City of Riviera Beach*, 138 S. Ct. 1945 (2018) ...........................................................19

*Mangella v. Keyes*, 613 F. Supp. 795 (D. Conn. 1985) ..................................................................8

*Marderosian v. Shamshak*, 170 F.R.D. 335 (D. Mass. 1997) .......................................................12

*Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977) ...............................18, 19

*Muhammad v. Close*, 540 U.S. 749 (2004) ....................................................................................17

*Nice v. City of Akron*, No. 18-cv-1565, 2019 WL 6771156 (N.D. Ohio Dec. 12, 2019) ..............16

*Nieves v. Bartlett*, 139 S. Ct. 1715 (2019) .......................................................2, 3, 12, 17, 18, 19, 20

*Peterson v. Johnson*, 714 F.3d 905 (6th Cir. 2013) .......................................................................17

*Plassman v. City of Wauseon*, 85 F.3d 629 (6th Cir. 1996).........................................................14

*Potts v. Hill*, 77 F. App'x 330 (6th Cir. 2003) ..............................................................................14

*Powers v. Hamilton Cnty. Pub. Def. Comm'n*, 501 F.3d 592 (6th Cir. 2007) .............................15

*R.E. Kramig Co. v. Resolute Mgmt, Inc.*,
    No. 07-cv-658, 2009 WL 1395342 (S.D. Ohio May 18, 2009).........................................4

*RLR Invs., LLC v. City of Pigeon Forge*, 4 F.4th 380 (6th Cir. 2021)..........................................13

*Thomas v. Eby*, 481 F.3d 434 (6th Cir. 2007) ...............................................................................13

*Thompson v. Wing*, 637 N.E.2d 917 (Ohio 1994)..........................................................................14

*VanderKodde v. Mary Jane M. Elliott, P.C.*, 951 F.3d 397 (6th Cir. 2020)............................12, 14

*Wheatt v. City of East Cleveland*,
    No. 17-cv-377, 2020 WL 2340229 (N.D. Ohio May 11, 2020) ...........................2, 3, 8, 9

*Wilson v. Morgan*, 477 F.3d 326 (6th Cir. 2007)............................................................................8

## Constitutional Provisions

U.S. Const. amend. I ...................................................................2, 13, 16, 17, 18, 19, 20

U.S. Const. amend. IV ....................................................................................................2

U.S. Const. amend. XIV, § 1 ..........................................................................................2

**Statutes and Codes**

28 U.S.C. § 2254 ...........................................................................................................15

42 U.S.C. § 1983 .........................................................................................8, 13, 14, 15, 16

Ohio Rev. Code § 2903.214(C)(1) .........................................................................13, 15

East Cleveland Code of Ordinances
      § 509.15 ............................................................................................................1
      § 311.02 ............................................................................................................1
      § 351.11 ............................................................................................................2

**Rules**

Local Rules for the United States District Court, Northern District of Ohio
      83.7 ...................................................................................................................3

Ohio Rules of Professional Conduct
      1.7 ............................................................................................................6, 7, 9

      3.7 ...................................................................................................................6

      3.7(a) ...............................................................................................................4

**Other Authorities**

Anna Meyer, *East Cleveland City Council Passes Legislation to Remove Law Director
      Willa Hemmons*, WKYC (Jan. 28, 2023),
      https://www.wkyc.com/article/news/local/cuyahoga-county/east-cleveland-city-council-
      resolution-remove-law-director/95-480a50a5-6be7-4ea2-a4ac-aac380abcfed ...................7

Plaintiff respectfully submits this brief in response to the Court's January 30, 2023 Order.

## BACKGROUND

Plaintiff William Fambrough ("William" or "Plaintiff") has been an outspoken critic of the City of East Cleveland's current administration, and he vocally supported a challenger to the incumbent mayor in the 2021 election. *See* ECF No. 25 ("MTD Opp."), at 1–2.[1] A centerpiece of that campaign was using William's step van as a sound truck to broadcast campaign messages and display campaign signage around the City. *See id.* Between May and the election in September, William suffered a torrent of retaliatory actions from Defendants (the City and its officials), including four visits from the police culminating in them towing and severely damaging his step van. *See id.* at 2–4. There is overwhelming evidence that Defendants' enforcement of City ordinances was pretextual and motivated by retaliation against William's political speech, including that Defendant McCollough told William and his attorney as much, and also that the ordinances had never been enforced against similarly situated people, or at all. *See id.* at 4–5.

Particularly relevant to some of the issues raised by this Court are three incidents discussed in the complaint. First, William pleaded no contest to violating a disorderly-conduct ordinance and paid a fine after he was originally cited for violating East Cleveland Code of Ordinances § 509.15 (the "Noise Ordinance")—despite having a sound permit signed by the police chief under § 311.02 (the "Permit Ordinance"). ECF No. 1 ("Compl.") ¶¶ 85–88, 164–65. William never appeared before a judge, much less did a court rule on any issues other than to accept the no-contest plea. *Id.* ¶¶ 160–65. Second, after his van was towed, William sought a civil-stalking protection order against Defendants King and Gardner, which was denied after a hearing before a county magistrate

---

[1] A comprehensive summary of the case and complaint is in William's opposition to Defendants' motion to dismiss, ECF No. 25, at 1–6. References to filings reflect their internal pagination.

judge. *See id.* ¶¶ 144–49. Third, William paid a fee after his van was cited and towed for violating East Cleveland Code of Ordinances § 351.11 (the "Parking Ordinance"). *See id.* ¶ 138. The constitutional claims and issues in this suit were never raised in those proceedings.

William filed this suit in June 2022, alleging First Amendment retaliation (Counts I–II), that the noise ordinances enforced against him are an unconstitutional prior restraint on speech (Count III), that Defendants' selective enforcement violated the Equal Protection Clause (Count IV), and that towing his van violated the Fourth Amendment (Count V). *See* MTD Opp. 6; Compl. ¶¶ 181–268. Defendants moved to dismiss, ECF No. 19 ("MTD")—which William opposed*, see* MTD Opp.—and they also answered the complaint, ECF No. 22 ("Answer"). While the motion to dismiss has been pending, the parties began discovery, although that has hit an impasse largely for reasons related to Defendants Hemmons and McCollough's conflicted roles. *See infra* Part I.C.

## ISSUES AND SUMMARY OF ARGUMENT

After reviewing the pending filings, the Court issued an order, ECF No. 35 (the "Order"), directing the parties to brief their positions on several supplementary subjects. These include whether Defendants Hemmons and McCollough may continue to represent their co-defendants, whether they may be deposed or called as trial witnesses, and whether any of Plaintiff's claims are barred by the *Rooker-Feldman*, *Heck*, and *Nieves* doctrines. *Id.* at 6–7.

In summary, Plaintiff's position is that Defendants Hemmons and McCollough cannot effectively or ethically continue to represent other Defendants. In fact, Hemmons was disqualified by this Court in another action three years ago for very similar conflicts to those that pervade this case. *See Wheatt v. City of East Cleveland*, No. 17-cv-377, 2020 WL 2340229, at *2 (N.D. Ohio May 11, 2020). Already, the unusual configuration of two defendants acting as attorneys for their

2

co-defendants has caused discovery problems. The conflicts are especially acute because both Hemmons and McCollough can and will be deposed, they are likely to be trial witnesses, they will need to produce their own personal communications while simultaneously evaluating privilege as to all discovery, and they both face the prospect of an individual money judgment against them.

The Court need not worry that the *Rooker-Feldman*, *Heck*, or *Nieves* doctrines preclude a decision on any of Plaintiff's claims. *Rooker-Feldman* does not apply because Plaintiff is not asking this Court to review any state-court judgment. *Heck* applies only where habeas would be a remedy—meaning the plaintiff is imprisoned—not to monetary fines. *Nieves*'s no-probable-cause rule does not apply because it is limited to cases involving retaliatory *arrests*, and William was never arrested. Even if *Nieves* were broader, two exceptions would apply here, for cases: (1) alleging a municipal retaliatory policy, and (2) with evidence that the defendants would not have enforced the relevant law against individuals who did not engage in disfavored speech.

## ARGUMENT

### I. Defendants Hemmons And McCollough May Not Effectively Or Ethically Represent Other Defendants, And They Both Can And Will Be Fact Witnesses.

Local Rule 83.7 binds attorneys "by the ethical standards of the Ohio Rules of Professional Conduct." Moreover, "[t]rial courts have the inherent power to disqualify an attorney from acting as counsel in a case when the attorney . . . will not comply with the Code of Professional Responsibility and when such action is necessary to protect the dignity and authority of the court." *Wheatt*, 2020 WL 2340229, at *2 (internal quotation marks omitted).

3

This Court should disqualify Defendants Hemmons and McCollough[2] from representing other defendants in this case because their representation creates at least two related conflicts of interest: (1) between the other defendants and Hemmons and McCollough as necessary fact witnesses, and (2) between the other defendants and Hemmons and McCollough as counsel. These conflicts have already led to irregular behavior prejudicing Plaintiff's ability to litigate this case.

### A.    Hemmons's And McCollough's Status As Necessary Fact Witnesses Creates A Conflict That Precludes Them From Representing Other Defendants.

Ohio Rule of Professional Conduct 3.7(a) mandates that "[a] lawyer *shall not* act as an advocate at trial in which the lawyer is likely to be a necessary witness" (emphasis added), as long as her testimony would be admissible and would not: (1) "relate[] to an uncontested issue"; (2) "relate[] to the nature and value of legal services rendered"; or (3) "work *substantial* hardship on the client." Because "[c]ombining the roles of advocate and witness" can create "a conflict of interest between the lawyers and the client" and "prejudice the tribunal and the opposing party," Cmt. 1, Ohio Rule of Prof. Conduct 3.7, an attorney witness must be disqualified as long as her testimony would be admissible and none of the three exceptions apply, *see R.E. Kramig Co. v. Resolute Mgmt, Inc.*, No. 07-cv-658, 2009 WL 1395342, at *4 (S.D. Ohio May 18, 2009) (explaining that "use of the term 'shall' " in the rules "requires mandatory disqualification").

Hemmons and McCollough are "likely to be [] material witness[es] regarding the issues at the heart of this action given the allegations of [their] participation" in the retaliatory actions against Plaintiff. *Gordon v. Phillip*, No. 21-cv-29, 2022 WL 973833, at *3 (M.D.N.C. Mar. 31,

---

[2] Although McCollough has not entered an appearance on behalf of any of the defendants, she has been representing the defendants in the discovery process so far. *See* Brothers Decl. Ex. 7 (B. Field Letter Jan. 25, 2023) (memorializing meet-and-confer conversation with both Hemmons and McCollough). McCollough and Hemmons also jointly filed a motion to withdraw as counsel for Defendant Scott Gardner. *See* ECF No. 32.

2022) (citation and brackets omitted); *see also Glazer v. Reimer, Arnovitz, Chernik & Jeffrey, Co.*, No. 09-cv-1262, 2015 WL 13932929, at *4 (N.D. Ohio Nov. 2, 2015) (lawyer's "knowledge and involvement in the underlying facts [of a] lawsuit ma[de] her a critical witness"). Indeed, McCollough's numerous statements "confirm[ing] that the true motivation of the enforcement was retaliation for political speech" are alone almost dispositive to resolve William's retaliation claims in his favor. Compl. ¶ 214; *see also id.* ¶¶ 156–66, 197–98, 228. And Plaintiff alleges that both Hemmons and McCollough (as the City's law department) played critical roles orchestrating Defendants' selective enforcement against him because of his political speech. *See, e.g.*, *id.* ¶¶ 188–90, 199, 202, 226–27, 247. Plaintiff will certainly depose them, and unless all Defendants admit Plaintiff's allegations, at least one will almost surely want to call Hemmons and McCollough as trial witnesses. Indeed, Defendants themselves listed McCollough as a potential witness in their initial disclosures, *see* ECF No. 24 at 2, and their motion to dismiss relied on Hemmons's personal knowledge of the underlying incidents. *See* MTD 6; ECF No. 26-1 (Field Decl. Supp. 56(d) Mot.) ¶ 8. Moreover, Hemmons is not only acting as a witness herself, but also as a witness on behalf of her co-defendant the City because she was the City's corporate representative in attesting to the City's interrogatory responses. *See* Brothers Decl. Ex. 1 at 21 (City Discovery Responses).[3]

Testimony on these topics would be admissible as firsthand knowledge of the events alleged in the complaint, and none of the three exceptions to the attorney-witness rule apply. First, their testimony would not relate to uncontested issues, as Defendants have denied all Plaintiffs' allegations. *See generally* Answer (denying effectively all allegations); *see also* MTD 2 (contesting the basic narrative of Plaintiffs' allegations as "social media and mass media hype"). Second, their testimony would not relate to the value of their legal services. And third, disqualification would

---

[3] Exhibit citations refer to the pagination added in the bottom-right-hand corner.

not cause the other defendants substantial hardship "at this early stage in the litigation," where discovery is still in early stages and "very little litigation has occurred." *Gordon*, 2022 WL 973833, at *3. "[T]here is adequate time for the [defendants] to get new counsel and for that counsel to adequately prepare for this case." *Glazer*, 2015 WL 13932929, at *5.

Because of the "dispositive [] fact" that Hemmons and McCollough "are named defendants in this lawsuit and will likely be called as witnesses," Rule 3.7 requires disqualification. *Farnhurst, LLC v. City of Macedonia*, No. 13-cv-668, 2015 WL 6758223, at *4 (N.D. Ohio Nov. 5, 2015) (disqualifying both law director and assistant law director from representing city because of status as co-defendants and fact witnesses); *see also Gordon*, 2022 WL 973833 at *3 (disqualifying attorney who was both defendant and witness, as his "testimony as a witness could differ from a co-defendant's or be adverse to their interests"); *Glazer*, 2015 WL 13932929 at *4 (disqualifying attorney because she was party to action underlying lawsuit and a "critical witness").

### B.  Hemmons's And McCollough's Representation Of Both Themselves And Their Co-Defendants Creates Additional Conflicts.

Hemmons's and McCollough's representation of themselves and their co-defendants separately violates Rule 1.7, which prohibits representing multiple clients in a case if the interests of one is "directly adverse to another current client" or "there is a *substantial* risk that the lawyer's ability to consider, recommend, or carry out an appropriate course of action for that client will be materially limited by the lawyer's responsibilities to another client . . . or by the lawyer's own personal interests." Ohio Rule of Prof. Conduct 1.7 (emphasis original). Disqualification is the necessary remedy when an attorney "actively represent[s] conflicting interests" and that conflict adversely affects her performance. *Gordon v. Norman*, 788 F.2d 1194, 1198 (6th Cir. 1986).

It is difficult to imagine a more stark Rule 1.7 conflict than when an attorney's status as a named defendant places her "own personal interests" in direct conflict with her co-defendant

clients' interests.[4] Here, Hemmons's and McCollough's personal interests diverge from each of their clients' because they could escape liability—and an attendant personal money-damages judgment—by laying the blame for the retaliatory actions at the door of any one of their co-defendants. To name just a few potential conflicts, they could argue that the City is culpable[5] because Hemmons and McCollough acted under orders from the mayor's office or pursuant to City policy. Or that the police officer defendants went rogue and are solely to blame. Their interests are not even aligned with each other: Hemmons could pin the retaliation on McCollough based on McCollough's statements before and during the noise-citation hearing (Compl. ¶¶ 156–66, 197–98, 228), or McCollough could say that she was only following Hemmons's orders. They even acknowledged conflicts with a co-defendant themselves by noting that defendant Gardner's indictment "renders representation by the City's law director and assistant law director (also named defendants in the instant matter[)] a violation of Ohio R. Prof. Conduct 1.7." ECF No. 32, at 2.

Courts have regularly recognized the conflict inherent in attorneys jointly representing themselves and their co-defendants and have remedied it through disqualification. In *Farnhurst*, a case cited by the Court's Order (at 5), this Court disqualified both Macedonia's law director and the assistant law director from representing themselves, the city, and other city employees based on the "dispositive [] fact" that they were co-defendants and necessary fact witnesses. 2015 WL 6758223, at *4. Another district court recently disqualified an attorney from representing himself

---

[4] That is especially true given the allegations here, where "the probity of [Hemmons's and McCollough's] own conduct . . . is in serious question," because that undermines their ability to "give a client detached advice." Cmt. 20, Ohio Rule of Prof. Conduct 1.7.

[5] Hemmons's conflict with the City has also been exacerbated by the City Council's recent resolution to remove her as Law Director. *See* Anna Meyer, *East Cleveland City Council Passes Legislation to Remove Law Director Willa Hemmons*, WKYC (Jan. 28, 2023), https://www.wkyc.com/article/news/local/cuyahoga-county/east-cleveland-city-council-resolution-remove-law-director/95-480a50a5-6be7-4ea2-a4ac-aac380abcfed.

7

and his eight co-defendants, finding that the attorney's representation of parties with differing theories of liability created a conflict of interest, and that "[t]he conflict is even more apparent" where the attorney was "among the Defendants facing liability." *Gordon*, 2022 WL 973833, at *2.

Hemmons's and McCollough's representation of all the defendants raises an especial conflict by trying to represent the City and its employees at the same time, the exact sort of conflict for which this Court has already disqualified Hemmons in another case. *See Wheatt*, 2020 WL 2340229 at *2. That "inherent conflict of interest arises in a § 1983 action when co-defendants in a suit are a local government and police officers or other employees in their individual capacity, as differing theories of liability and differing defenses are applicable to each defendant." *Mangella v. Keyes*, 613 F. Supp. 795, 797 (D. Conn. 1985); *see also Gordon*, 788 F.2d at 1199 (explaining the "great potential for conflict . . . in § 1983 suits"); *Wilson v. Morgan*, 477 F.3d 326, 345–46 (6th Cir. 2007) (recognizing that a "Law Director . . . simultaneously represent[ing] the county and the officers in their individual capacities" created potential for conflict); *Carrero v. Farrely*, 280 F. Supp. 3d 774, 779 (D. Md. 2017) (disqualifying county attorney from representing both the county and police officer in his individual capacity before discovery commenced in a § 1983 suit).

That conflict is further heightened where, as here, a plaintiff is seeking money damages, which was why this Court disqualified Hemmons for representing both the City and three police officers at the indemnification stage of a civil-rights lawsuit in *Wheatt*. 2020 WL 2340229 at *2. Because of the "obvious conflict of interest" presented by representing parties with opposing financial interests, this Court found that Hemmons's representation of both the City and the individual defendants was "completely improper," "patently inappropriate," and a "flagrant

violation of the standards of professional conduct" that merited disqualification. *Id.* at *1–*2.[6] Those opposing interests are manifest here, too, because Plaintiff's claim for money damages creates a financial incentive for each of the defendants to shift liability to the others. Hemmons and McCollough should likewise be disqualified as counsel.

### C.   These Conflicts Have Already Led To Identifiable Improprieties In This Case That Have Prejudiced Plaintiff.

The compound conflicts between Hemmons, McCollough, and the other defendants have already resulted in irregular behavior that has prejudiced Plaintiff's ability to litigate this case in at least two significant ways. *See, e.g.*, *Kitchen v. Aristech Chem.*, 769 F. Supp. 254, 257 (S.D. Ohio 1991) (explaining that disqualification is proper when "there is 'a reasonable possibility that some specifically identifiable impropriety' actually occurred" (citation omitted)).

First, Hemmons and McCollough have demonstrated that they will prioritize some defendants' interests over others, putting Plaintiff's counsel in the ethically dubious position of having to mediate those conflicts of interest. When Defendant Gardner was indicted for aggravated theft and suspended from his job as police chief on August 25, 2022, Hemmons did nothing to remedy what she later acknowledged to be a "violation of Ohio R. Prof. Conduct 1.7" created by her continued representation of Gardner for over a month. ECF No. 32, at 1. Plaintiff's counsel raised the conflict and tried to find out whether she was still representing Gardner in order to serve discovery requests, and Hemmons told Plaintiff that she was not in touch with Gardner—even though she was still Gardner's counsel of record—and to instead contact Gardner's criminal

---

[6] While courts often require "specifically identifiable impropriety" before disqualifying an attorney based on a conflict of interest, *see, e.g.*, *Eng'g & Mfg. Servs., LLC v. Ashton*, No. 07-cv-689, 2011 WL 13238209, at *2 (N.D. Ohio Sept. 9, 2011) (citation omitted), that requirement is not present in cases disqualifying attorneys based on their status as co-defendants or witnesses, *see, e.g.*, *Farnhurst, LLC v. City of Macedonia*, No. 13-cv-668, 2015 WL 6758223 (N.D. Ohio Nov. 5, 2015). In any event, the conflicts in this case *have* caused improprieties. *See* Section I.C, *infra.*

attorney. *See* Brothers Decl. Ex. 2 at 2 (September 2022 email exchange). In fact, Hemmons and McCollough moved to withdraw as Gardner's attorneys two weeks later—without prior notice to Gardner—only after Plaintiff served Hemmons with discovery requests to Gardner. *See id.* at 1; Brothers Decl. Ex. 3 (email serving discovery requests); ECF No. 32, at 2–3. When Defendant Wood was indicted on a separate offense, Plaintiff's counsel asked if Hemmons would be taking the same tack as with Gardner and was told that Hemmons was "reviewing the circumstances"— raising the specter that Wood's representation could also be terminated unpredictably. *See* Brothers Decl. Ex. 4 at 1 (W. Hemmons Email, Oct. 26, 2022). In other highly irregular incidents, Hemmons has had Plaintiff's counsel interact directly with individual defendants rather than acting herself as their attorney to collect their answers to discovery requests. *E.g.*, Brothers Decl. Exs. 2 at 1; 5 at 29 (W. Hemmons Email Nov. 21, 2022); 9 at 1 (W. Hemmons Email Sept. 19, 2022).

Second, Hemmons and McCollough have avoided fulfilling their discovery responsibilities by muddling their simultaneous roles as counsel to the individual defendants and as the City's corporate counsel. On the one hand, they have at times refused to act as lawyers to the defendants in their personal capacities. For instance, Plaintiff's counsel had a meet-and-confer with Hemmons and McCollough on January 25, 2023, to discuss the discovery disputes that Plaintiff had brought to the court in a December 5 email. *See* Brothers Decl. Ex. 5 (B. Field Email to the Court, summarizing disputes). At that meeting, Hemmons and McCollough informed Plaintiff's counsel that the extent of their involvement in compiling the individual defendants' responses was to email the Defendants or their supervisors to ask if they had responsive information, that they left it to Defendants to interpret for themselves what was requested rather than provide legal guidance, and that they refused to search the individual defendants' personal devices and accounts for communications responsive to Plaintiff's requests because they did not have access to their

personal information as officers in the City Law Department. Brothers Decl. Ex. 7 (B. Field Email, Jan. 25, 2023); *see also* Brothers Decl. Ex. 8 at 4 (City RFP Responses) (objecting that Plaintiff must seek subpoenas if he "want[s] Defendant's personal cellular phones searched"). Hemmons has also informed Plaintiff's counsel that she has limited contact with some of the defendants she is purportedly representing in their personal capacity and can only contact them through official channels while they are on duty. *See* Brothers Decl. Exs. 2 at 1; 4 at 1 (W. Hemmons Email, Oct. 26, 2022); 5 at 29; 6 at 1 (W. Hemmons Email, Dec. 7, 2022).

At the same time, Hemmons and McCollough have also acted at times as if they are representing the defendants only in their personal capacities and not the City as an entity. For instance, in compiling responses to discovery requests posed to the City, Hemmons and McCollough sought responsive information from only the named defendants—and no other City employees—and produced only documents readily available to the Law Department, as opposed to all documents within the City's control. *See* Brothers Decl. Ex. 7; *see also* Brothers Decl. Exs. 8 at 5 (objecting that records sought are "more readily available in the East Cleveland Municipal Court docket system . . . pursuant to a subpoena"); 1 at 4, 5, 6 (same objection); 5 at 19.

In short, Plaintiff has been unable to conduct regular discovery because Hemmons and McCollough have not consistently acted as attorneys fully representing each of the defendants they purport to represent. The hopeless conflicts of interest have thus already prejudiced Plaintiff and have rendered the deadlines contemplated in the parties' Rule 26(f) report infeasible. The prejudice is likely only to increase as Plaintiff forges ahead with discovery[7] and begins deposing witnesses.

---

[7] Going forward, the conflicts described in sections I.A and I.B, *supra*, also implicate Hemmons's and McCollough's ability to objectively search their own and their co-defendants' documents for those responsive to Plaintiff's discovery requests. Their status as co-defendants in a damages suit creates a personal financial inventive against turning over documents that incriminate themselves and makes it difficult to objectively identify which—if any—documents are privileged.

Indeed, given the conflicts and the prospect of disqualification, Plaintiff is hesitant to continue conducting discovery because Defendants may later repudiate the actions taken by Hemmons and McCollough. *See, e.g.*, *Marderosian v. Shamshak*, 170 F.R.D. 335, 340 (D. Mass. 1997).

## II. The *Rooker-Feldman*, *Heck*, And *Nieves* Doctrines Do Not Apply To Or Bar Any Of William's Claims.

The Court asked the parties to brief the *Rooker-Feldman*, *Heck*, and *Nieves* doctrines to allay any concern that William's no-contest plea or application for a restraining order precludes this Court from deciding his constitutional claims. *See* Order 6–7. Plaintiff assures the Court that there is no barrier. *Rooker-Feldman* is inapplicable because Plaintiff is not asking this Court to overturn the final judgment of a state court. Nor does *Heck* apply: William was never imprisoned, much less imprisoned and trying to use this suit in place of a habeas proceeding to spring himself from jail. Finally, *Nieves* is inapplicable because it is about arrests, and William was never arrested.

### A. *Rooker-Feldman* Does Not Apply To This Suit Because It Does Not Ask This Court To Review Any State Court Decision.

The *Rooker-Feldman* doctrine "applies only in 'limited circumstances,' where a party in effect seeks to take an appeal of an unfavorable state-court decision to a lower federal court." *Lance v. Dennis*, 546 U.S. 459, 466 (2006) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291 (2005)). It serves the limited purpose of preventing an end-run around the certiorari process for "appellate review of final state-court judgments." *VanderKodde v. Mary Jane M. Elliott, P.C.*, 951 F.3d 397, 402 (6th Cir. 2020) (quoting *Berry v. Schmitt*, 688 F.3d 290, 298 (6th Cir. 2012)). Thus, the doctrine applies *only* "[i]f the source of the plaintiff's injury is the state-court judgment itself." *Id.* "If there is some other source of injury, such as a third party's actions, then the plaintiff asserts an independent claim." *Id.* (quoting *Lawrence v. Welch*, 531 F.3d 364, 368–69 (6th Cir. 2008)). Simply put, the doctrine does not apply if the plaintiff "[i]s not seeking to overturn [a] state-court judgment." *Exxon Mobil*, 544 U.S. at 291.

12

This case does not fit into the *Rooker-Feldman* framework because William is not seeking to circumvent the certiorari process, nor asking this Court to review or overturn any state-court decisions. He is not even saying state courts got anything wrong. Although a municipal court entered a judgment for disorderly conduct when William pleaded no contest, *see* Compl. ¶ 164, he "is not trying to get the [charge] expunged or to get the decision overturned." *Berry*, 688 F.3d at 300. Likewise, in this suit William takes no issue with the county court decision denying him a stalking-protection order. Without any impact on this suit, William could concede that court's denial was correct because King and Gardner's actions did not fit within the narrow terms of the civil stalking statute. *See* Ohio Rev. Code § 2903.214(C)(1) (allowing protective orders only for violating menacing-by-stalking statute or a "sexually oriented offense"). Neither proceeding considered any of the constitutional claims William is making in this Court.

This case is just like *Thomas v. Eby*, 481 F.3d 434 (6th Cir. 2007) (cited at Order 6). There, a prisoner alleged First Amendment retaliation against a guard after an altercation for which the prisoner was found guilty of misconduct and where his appeal of that finding to state court had been dismissed for failure to pay a filing fee. 481 F.3d at 436. When he brought a federal Section 1983 suit, the Sixth Circuit held that "the *Rooker-Feldman* doctrine does not apply." *Id.* at 437–38. There, as here, the plaintiff "complain[ed] of [an] injury resulting from alleged retaliation, not from the state court's judgment." *Id.* at 438. There, as here, "[t]he state court never had occasion to determine any issues relevant to this case." *Id.* And there, as here, the plaintiff "can win his retaliation claim without invalidating any aspect of the state court's judgment." *Id.*[8]

---

[8] The other *Rooker-Feldman* case cited in this Court's Order simply held that the doctrine applies to interlocutory state-court judgments in addition to final judgments. *See RLR Invs., LLC v. City of Pigeon Forge*, 4 F.4th 380, 387 (6th Cir. 2021). That distinction is not relevant to this case.

More generally, the Supreme Court has repeatedly "warned . . . the lower courts" against applying the *Rooker-Feldman* doctrine outside its narrow confines, *Lance*, 546 U.S. at 464, as has the Sixth Circuit. Judge Sutton recently wrote a concurrence in *VanderKodde* to emphasize this point to district courts in this Circuit. As the Supreme Court has actually applied the *Rooker-Feldman* doctrine, he explained, "unless your name was Rooker or Feldman," the doctrine has "applied to no one, save the occasional innocent who thought he could obtain appellate review of a final state supreme court decision in federal district court, as opposed to the U.S. Supreme Court." 951 F.3d at 405 (Sutton, J., concurring). He ended with a plea to district courts:

> Absent a claim seeking review of a final state court judgment, a federal court tempted to dismiss a case under *Rooker-Feldman* should do one thing: Stop. If the temptation lingers, the court should try something else: Reconsider. And if that does not work, the court should exercise jurisdiction anyway . . . .

*Id.* at 409; *accord, e.g.*, *Behr v. Campbell*, 8 F.4th 1206, 1212 (11th Cir. 2021) ("[D]istrict courts should keep one thing in mind when *Rooker-Feldman* is raised: it will almost never apply.")[9]

---

[9] *Rooker-Feldman* cases teach that affirmative defenses like issue preclusion and claim preclusion are instead the appropriate mechanisms for limiting re-litigation of issues already decided in state court. *E.g.*, *Exxon Mobil*, 544 U.S. at 293. Although this Court did not request briefing on those issues, for completeness Plaintiff will concisely address why those doctrines also do not apply.

*First*, issue preclusion only "applies when a fact or issue '(1) was actually and directly litigated in the prior action; (2) was passed upon and determined by a court of competent jurisdiction, and (3) when the party against whom [issue preclusion] is asserted was a party in privity with a party to the prior action.' " *Potts v. Hill*, 77 F. App'x 330, 334 (6th Cir. 2003) (quoting *Thompson v. Wing*, 637 N.E.2d 917, 923 (Ohio 1994)). No facts or issues were actually litigated at all in the noise-complaint proceeding, no relevant issues were decided in the civil-stalking proceedings, and most of Defendants in this suit were not parties to either.

*Second*, for claim preclusion to "bar to a second lawsuit," "that lawsuit must be between the same parties and involve the same cause of action." *Plassman v. City of Wauseon*, 85 F.3d 629 (6th Cir. 1996) (unpublished). None of William's state-court proceedings involved the same cause of action, and each involved only one or two of Defendants in this suit. Moreover, in applying Ohio preclusion principles, the Sixth Circuit has explained that a "§ 1983 claim is not the same cause of action as the state's criminal case," especially in cases—like William's noise-complaint proceeding—where a plaintiff was "in a defensive posture during criminal proceedings" and there is "no indication" he "could have raised [his] § 1983 claims during those proceedings." *Ingram v.*
*(footnote continued on next page)*

**B.**     *Heck* **Does Not Apply To This Case.**

The Court also need not be concerned that William's parking- and noise-related fines trigger the *Heck* bar because that applies only when a plaintiff is imprisoned—which William was not. Independently, *Heck* doesn't apply because William isn't seeking to overturn any judgment.

**1.**     *Heck* **does not apply to a case like this where the plaintiff was never imprisoned and never had a habeas remedy available to him.**

In *Heck v. Humphrey*, the Supreme Court considered a statutory-interpretation question of whether Section 1983 was available to prisoners who could also invoke the federal habeas remedy of 28 U.S.C. § 2254. 512 U.S. 477, 480–81 (1994). To harmonize the two statutes and ensure that Section 1983 did not circumvent Section 2254's exhaustion requirement, the Court held that "when a state prisoner seeks damages in a § 1983 suit, the district court must" dismiss the action if "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." *Id.* at 487. *Heck* applies, then, only where a plaintiff is a *prisoner* with a habeas remedy.

The Sixth Circuit has squarely held that "*Heck*'s favorable-termination requirement cannot be imposed against § 1983 plaintiffs who lack a habeas option for the vindication of their federal rights." *Powers v. Hamilton Cnty. Pub. Def. Comm'n*, 501 F.3d 592, 603 (6th Cir. 2007). The *Heck* bar does not apply where "the plaintiff had been assessed only a monetary fine . . . and thus was ineligible for habeas relief." *Id.* (citing *Leather v. Ten Eyck*, 180 F.3d 420, 424 (2d Cir. 1999)).[10]

---

*City of Columbus*, 185 F.3d 579, 593 (6th Cir. 1999); *accord Graves v. Mahoning County*, 534 F. App'x 399, 405 (6th Cir. 2013). William also did not assert his constitutional claims for his pro se protective-order petition, nor could he have because such proceedings are narrowly limited to claims of statutory stalking or sexual misconduct. *See* Ohio Rev. Code § 2903.214(C)(1).

[10] *Cummings v. City of Akron*, 418 F.3d 676 (6th Cir. 2005), is not to the contrary because the conviction there had a jail sentence. *See id.* at 680, 682. Likewise, the plaintiff was imprisoned in the unpublished Ninth Circuit case cited in the Order. *Arrington v. City of Los Angeles*, No. 16-56755, 2021 WL 4168156 (9th Cir. Sept. 14, 2021); *see* Pet. For Writ of Cert. 3, *Arrington v. City of Los Angeles*, No. 22-64, 2022 WL 2954785, at *3 (U.S. July 21, 2022) (19 months in jail).

The *Heck* bar plainly does not apply to William's case because he received "only a monetary fine" in both enforcement actions. Compl. ¶¶ 138, 165, 195. Because he was (thankfully) never imprisoned, habeas was never a remedy to him, so *Heck* does not apply.

**2.      Independently, *Heck* does not apply to a case like this that does not challenge the validity of any convictions.**

Even if *Heck* were not limited to cases where a habeas remedy is available, it still would not apply here. A separate precondition is that *Heck* applies only where a suit alleges that a conviction itself is unlawful, 512 U.S. at 486—where "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence," *id.* at 487. That is not the case here.

Start with the parking fine. Although the Parking Ordinance is ambiguous about whether it really applied to William, this suit does not seek to invalidate the citation. Rather, the suit is about the unconstitutional retaliatory *motivation* for citing William and the larger pattern of retaliation. William's claims about selective Parking Ordinance enforcement do not require him to "negate an element of the offense" for which he was fined. *Id*. at 486 n.6; *see also Cummings v. City of Akron*, 418 F.3d 676, 683 (6th Cir. 2005) (no *Heck* bar where Section 1983 suit's claims would not be defense to underlying charge); *Nice v. City of Akron*, No. 18-cv-1565, 2019 WL 6771156, at *2 (N.D. Ohio Dec. 12, 2019) (no *Heck* bar in First Amendment retaliation case alleging retaliation beyond underlying charge).

This same logic likewise applies almost entirely to enforcement of the Noise Ordinance. The only potential complication is that Count III of the complaint does challenge the constitutionality of the Noise and Permit Ordinances. *See* Compl. ¶¶ 232–47. But even that claim could not impugn any conviction because William did not plead to a violation of those ordinances, but instead to a violation of a separate disorderly-conduct ordinance that he is not attacking. And *Heck* certainly couldn't affect prospective relief against the unconstitutional ordinances.

16

In short, even if William is completely successful on every claim in this suit, the validity of neither his parking citation nor his disorderly-conduct plea would be impaired, so *Heck's* bar cannot apply. *See Muhammad v. Close*, 540 U.S. 749, 751 (2004) ("*Heck*'s requirement . . . is not . . . implicated by a prisoner's challenge that threatens no consequence for his conviction or the duration of his sentence."); *Peterson v. Johnson*, 714 F.3d 905, 918 (6th Cir. 2013) (same).

### C.    *Nieves* Does Not Apply To William's First Amendment Retaliation Claim.

In asking the parties to brief *Nieves*, the Court is concerned about whether the First Amendment retaliation claims are precluded if probable cause for citing William for parking or noise violations is evident on the face of the complaint. *Nieves* does not apply because the doctrine is only about retaliatory arrests, and William was never arrested. It also does not apply in situations like this where there is a municipal retaliatory policy, or where there is evidence that officers don't enforce against similarly situated individuals not engaged in disfavored speech.

#### 1.    *Nieves* applies only to retaliatory *arrests*.

In *Nieves v. Bartlett*, the Supreme Court held that "probable cause should generally defeat a retaliatory *arrest* claim" under the First Amendment. 139 S. Ct. 1715, 1727 (2019) (emphasis added). The opinion was clear throughout that it was just about arrests. *E.g.*, *id.* at 1721 (question presented was "whether probable cause to make an *arrest* defeats a claim that the arrest was in retaliation for speech"); 1723 (defendants argued "no-probable-cause requirement should apply to First Amendment retaliatory *arrest* claims"), 1725 ("no-probable-cause rule" applies to "retaliatory *arrest* claim[s]") (all emphases added). Because William was not arrested and is not suing about an arrest, *Nieves*'s no-probable-cause rule simply does not apply to his claims.

Not only does the text of the *Nieves* opinion expressly limit its holding to the arrest context, but its logic does too. In *Nieves*, an inebriated festivalgoer was arrested for disorderly conduct after an altercation with police, and he then claimed the true cause for the arrest was that he yelled at

and told people not to talk to the police. 139 S. Ct. at 1720–21. The Court reasoned that in such cases "protected speech is often a wholly legitimate consideration for officers when deciding whether to make an arrest" because they "frequently must make split-second judgments when deciding whether to arrest, and the content and manner of a suspect's speech may convey vital information." *Id.* at 1724 (internal quotation marks omitted). Situations like that render "[t]he causal inquiry . . . complex" for determining whether an arrest was retaliation against protected speech or based on a legitimate purpose. *Id.* at 1723.

Outside of specific carve-outs like *Nieves* where that causal inquiry is "complex," the standard First Amendment-retaliation framework is the one from *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274 (1977). *See Nieves*, 139 S. Ct. at 1722. A plaintiff must "show that his conduct was constitutionally protected, and that this conduct was" a "substantial" or "motivating" factor in the decision to take an adverse action, at which point the burden shifts to the government to show "by a preponderance of the evidence that it would have reached the same decision . . . even in the absence of the protected conduct." *Mt. Healthy*, 429 U.S. at 287 (citations omitted); *see also* MTD Opp. 9–10.

The *Mt. Healthy* framework makes sense here, while the logic of *Nieves* is inapplicable. Here, unlike in *Nieves*, the content of William's political advocacy was irrelevant to the parking violations or noise pollution. Far from making a "split-second judgment," Defendants here orchestrated a months-long campaign to silence William's political speech. The "causal inquiry" is no more "complex" than any other retaliation case. Indeed, Defendant McCollough *admitted* that the enforcement was based on William's speech, and there is overwhelming evidence that Defendants never (or rarely) enforce the ordinances against similarly situated people. And the injuries William suffered go well beyond the citations: The most serious injuries are damage from

18

the unnecessary tow, the loss of First Amendment freedoms from having his political speech restricted by the stream of harassment and the disabling of his sound truck, and the chill William continues to suffer from fear of further retaliation. Compl. ¶¶ 167–80.

*Mt. Healthy*'s burden-shifting framework is an excellent fit for this case. Extending *Nieves* beyond its narrow reach to all government enforcement actions would eviscerate the First Amendment by licensing officials to weaponize state and local laws that "have grown so exuberantly and come to cover so much previously innocent conduct that almost anyone can be" punished, such that "little would be left of our First Amendment liberties." *Nieves*, 139 S. Ct. at 1730 (Gorsuch, J., concurring in part and dissenting in part).

**2.  Even if *Nieves* applied outside the arrest context, it still would not apply to William's First Amendment retaliation claim.**

Even if *Nieves*'s no-probable-cause rule applied outside of the arrest contest—and it does not—it still would not affect William's claims because he satisfies two exceptions.

***First***, William's retaliation claims fit squarely within *Lozman v. City of Riviera Beach*, which rejected a no-probable-cause requirement for claims that "allege[] more governmental action than simply an arrest," but instead "an official municipal policy of intimidation." 138 S. Ct. 1945, 1954 (2018) (internal quotation marks omitted). That is because "[a]n official retaliatory policy is a particularly troubling and potent form of retaliation, for a policy can be long term and pervasive, unlike an ad hoc, on-the-spot decision by an individual officer." *Id.* Such claims don't involve significant causation problems because, as here, "the official policy is retaliation for prior, protected speech bearing little relation to the . . . offense for which [enforcement] is made." *Id.*

William has amply alleged a municipal retaliatory policy, orchestrated by the City's leadership, and involving many officials over several months. Compl. ¶¶ 3–4, 6, 67–73, 74–78, 95–101, 105–43, 150–51, 187, 190–91, 199–202, 219, 221–29, 255, 265–68; MTD Opp. 18–19.

**Second**, *Nieves* itself carved out a "qualification" to its no-probable-cause rule "for circumstances where officers have probable cause to make arrests, but typically exercise their discretion not to do so." 139 S. Ct. at 1727. The Court gave an example that is very much like William's parking and noise citations: "If an individual who has been vocally complaining about police conduct is arrested for jaywalking . . . it would seem insufficiently protective of First Amendment rights to dismiss the individual's retaliatory arrest claim on the ground that there was undoubted probable cause for the arrest." *Id.* Thus, "the no-probable-cause requirement should not apply when a plaintiff presents objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Id.*

William's complaint is chock-full of such evidence, for instance that: McCollough *told* William and his attorney that the enforcement only happened because of his First Amendment-protected activity; the Parking Ordinance had never been enforced *at all* (nor against William for the prior 15 years or against others with similar vehicles); William had a sound permit signed by the police chief and nevertheless faced enforcement; and the Noise Ordinance was never enforced against William or others before, when they used sound trucks in campaigns that weren't against the mayor. *E.g.*, MTD Opp. 4–5; Compl. ¶¶ 211–14. Thus, even if *Nieves*'s no-probable-cause rule applied to non-arrest cases, William's First Amendment retaliation claims would survive.

## CONCLUSION

Hemmons and McCollough should be disqualified from representing any other defendant in this case. For the reasons above and in Plaintiff's opposition to Defendants' motion to dismiss, the Court should also deny the motion to dismiss and allow all Plaintiff's claims to proceed.

February 13, 2023

Respectfully submitted,

/s/ *Benjamin A. Field*
Benjamin A. Field*
Caroline Grace Brothers*
Brian A. Morris (Bar No. 0093530)
INSTITUTE FOR JUSTICE
901 North Glebe Road, Suite 900
Arlington, VA 22203
Phone:     (703) 682-9320
Facsimile:  (703) 682-9321
bfield@ij.org
cgbrothers@ij.org
bmorris@ij.org

Jeffrey Rowes*
INSTITUTE FOR JUSTICE
816 Congress Ave., Suite 960
Austin, TX 78701
Phone:     (512) 480-5936
Facsimile:  (512) 480-5937
jrowes@ij.org

*Counsel for Plaintiff*

*Admitted pro hac vice.*

21

**CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing document complies with the page limit set out in this Court's January 30, 2023 Order, ECF No. 35, because the brief does not exceed 20 pages, excluding the tables of contents and authorities.

/s/ *Benjamin A. Field*
Benjamin A. Field

*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 13th day of February, 2023, a true and correct copy of the foregoing document was filed via the ECF system and that all Defendants except Defendant Scott Gardner were thereby electronically served via the ECF system. Defendant Gardner is being served separately by electronic mail.

/s/ *Benjamin A. Field*
Benjamin A. Field

*Counsel for Plaintiff*