UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| WILLIAM FAMBROUGH, *et al.*, | ) | |
| | ) | CASE NO. 1:22-cv-00992 |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | JUDGE BRIDGET MEEHAN BRENNAN |
| | ) | |
| | ) | |
| CITY OF EAST CLEVELAND, *et al.*, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | |

William Fambrough brought this action under 42 U.S.C. § 1983 against the city of East Cleveland and several of its employees. (Doc. No. 1 at ¶¶ 192-268.) All initially named Defendants jointly filed an Answer. (Doc. No. 22.) Defendants also filed a motion to dismiss under Rule 12(b)(6) or, in the alternative, for summary judgment under Rule 56. (Doc. No. 19.) Plaintiff responded to that motion (Doc. No. 25), and Defendants replied (Doc. No. 27). Plaintiff also filed a motion pursuant to Rule 56(d) explaining a need for discovery. (Doc. No. 26.) The parties also submitted additional briefing on issues raised by the Court. (*See* Doc. Nos. 35-40.)

Prior to a ruling on those pending motions, Fambrough filed a motion for leave to file an amended complaint, which was granted. (Doc. Nos. 41 & 43.) A company owned by Fambrough was added as a co-plaintiff, as were two more public employee defendants. (*See* Doc. No. 44.) Defendants then jointly renewed their motion to dismiss. (Doc. No. 47.)

Plaintiffs have now moved to disqualify Willa Hemmons and Heather McCollough as counsel for defendants. (Doc. No. 46.) Plaintiffs also moved to strike Defendants' motion to dismiss, which Hemmons signed. (Doc. No. 51.) This Opinion resolves Plaintiffs' motions to

strike and to disqualify as well as Defendants Hemmons' and McCollough's motion to dismiss on the basis of prosecutorial immunity. (*See* Doc. No. 47.)

### I. Facts

Plaintiff William Fambrough lives in East Cleveland and alleges that for around fifteen years he parked his step van at his home without question or incident. (Doc. No. 44 at ¶¶ 1-2.) Plaintiff used his step van to carry equipment for his media company and occasionally as a sound truck. (*Id.* ¶ 52.) Plaintiff would outfit the step van with a loudspeaker. He would drive through the streets of East Cleveland with a political sign on the side of the van broadcasting pre-recorded messages in support of a campaign. (*Id.* ¶ 55.) Several times in years past he operated the sound truck in East Cleveland to broadcast pre-recorded messages in support of political candidates. (*Id.*) But in 2021, when he used the van to campaign for a challenger against the incumbent mayor, Plaintiff claims that the defendants retaliated. (*Id.* ¶¶ 3-4.)

On May 14, 2021, officer Mark Allen came to Plaintiff's home and told him that parking a step van in his driveway violated East Cleveland Ordinance § 351.11 (the "Parking Ordinance"). (*Id.* ¶ 73.) The Parking Ordinance prohibited "park[ing] a truck, commercial tractor, trailer, semi-trailer, a motor home or recreational vehicle on a roadway or driveway at any time in front of or alongside property used for residential purposes except in case of a breakdown of such vehicle, or for loading and unloading purposes." (*Id.* ¶ 74.)

Allen issued a warning ticket and gave Plaintiff three days to comply. (*Id.* ¶ 73.) On May 17, 2021, Allen returned to find the step van still in Plaintiff's driveway and ordered that it be towed. However, the tow truck was not equipped for a vehicle the size of the step van. (*Id.* ¶ 82.) So, Plaintiff drove the van away and thereafter parked it outside of East Cleveland. (*Id.* ¶¶ 83-84.)

On June 28, 2021, Plaintiff went to city hall to obtain a permit to operate a sound truck in East Cleveland.  (*Id.* ¶ 91.)  His intention was to broadcast messages in support of Councilwoman Juanita Gowdy, who would challenge Mayor Brandon King in the Fall 2021 election.  (*Id.* ¶¶ 59-65 & 91.)

East Cleveland Ordinance § 509.15(a) (the "Noise Ordinance") prohibited "play[ing] any radio, music player . . . audio system . . . or any other type of sound service upon any public road, street, highway or private property in this municipality in a manner or volume as to disturb the quiet, comfort or repose of other persons."  (*Id.* ¶ 85.)  The Noise Ordinance contained an exception for "organized events which have received a valid permit from the city as set forth in § 311.02 . . . ."  (*Id.* ¶ 86 (quoting East Cleveland Ordinance § 509.15(a)).)

East Cleveland Ordinance § 311.02 (the "Permit Ordinance") prohibited "parad[ing] or hold[ing] a procession, or attempt[ing] to parade or hold a procession, in or upon any of the streets, park or public grounds of the city without first obtaining a permit therefor."  (*Id.* ¶ 87 (quoting E. Cle. Ord. § 311.02(a).)  "Under Section 311.02(c), a permit 'shall be issued only upon and after the approval by the Chief of Police and the Mayor.'"  (*Id.* ¶ 88 (quoting E. Cle. Ord. § 311.02(c).)  "The permit form used by East Cleveland – styled a 'sound device permit' – has signature lines for both the Mayor and the Chief of Police."  (*Id.* ¶ 89.)

Plaintiff received a permit form from an assistant in the mayor's office, who directed him to obtain the police chief's signature.  (*Id.* ¶ 92.)[1]  He took it to the police department, and the police chief signed it the same day.  (*Id.* ¶ 94.)  Upon receiving that one signature on the permit,

---

[1] Plaintiff "understood that to mean that the Mayor's approval was implied."  (Doc. No. 44 at ¶ 92.)

Plaintiff began using his step van as a sound truck once or twice each week to broadcast messages in support of the mayor's challenger in East Cleveland.  (*Id.* ¶ 95-96.)

On July 27, 2021, police visited Plaintiff's home and asked if he had used a sound truck recently.  (*Id.* ¶ 103.)  He confirmed that he had.  (*Id.* ¶ 104.)  Police officers advised in response that the local ordinance required him to have a permit to do so.  (*Id.*)  Instead of showing his permit or explaining that he had obtained one signature, Plaintiff simply responded that he would comply with the law.  (*Id.* ¶ 105.)

In response, the police did not issue a citation or a threat.  Instead, they only advised Plaintiff that he needed to get a permit.  (*See id.*)  But Plaintiff alleged that police had not asked him about a permit when he operated his sound truck before – neither in years past nor in the preceding weeks.  (*Id.* ¶ 107.)

"Worried that the police would continue hassling him or even prevent him from using his truck, [Plaintiff] went to the Cuyahoga County Sheriff's Office on July 29, 2021, and filled out a citizen's complaint . . . against the police officers who had written him the warning parking ticket, threatened to tow his step van, and bothered him about the permit for using his step van to campaign . . . ."  (*Id.* ¶ 108.)  "In his statement, William explained that he had a permit to operate his step van as a sound truck signed by the chief of police."  (*Id.* ¶ 109.)

A few weeks later on the morning of August 18, 2021, the step van was parked on the street in front of Plaintiff's home.  Plaintiff planned to take it out as a sound truck at 5:30 p.m. that day.  (*Id.* ¶ 131.)  Police arrived and Officer Kyle Wood issued a citation for violation of the Parking Ordinance.  (*Id*. ¶ 139.)  The step van was towed, and police did not allow Plaintiff or someone else to drive it away voluntarily.  (*Id.* ¶¶ 140-44.)

Officer Andrew Majercik issued a complaint and summons citation for violation of the Noise Ordinance. (*Id.* ¶ 150.) Majercik allegedly commented that this was coming from his "boss" Chief Gardner and "from the brass." (*Id.* ¶ 151.) Majercik told Plaintiff that there had been service calls about the sound truck. (*Id.* ¶ 155.) Soon after, Plaintiff received a notice to appear in court for the noise citation, scheduled for September 23, 2021.

On September 2, 2021, Plaintiff filed petitions for civil stalking protection orders against Mayor King and Police Chief Gardner. (*Id.* ¶¶ 171-73.) On September 3rd, the court denied *ex parte* and set a hearing date for September 20, 2021. (*Id.* ¶ 174.) King, Gardner, and law director Willa Hemmons attended that hearing, where the magistrate judge denied the petitions. (*Id.* ¶ 175.)

On September 14, 2021, Mayor King prevailed over Gowdy and other challengers in the election. (*Id.* ¶ 178.)

Two days before a September 23, 2021, scheduled court date on the Noise Ordinance complaint, Plaintiff's attorney called McCollough to plea bargain. (*Id.* ¶¶ 179-80.) McCollough pointed out that Plaintiff's permit lacked the requisite signatures. (*Id.* ¶ 181.) McCollough allegedly stated that although she would normally resolve a noise pollution citation, she "might" not for Plaintiff who needed to "stand down." (*Id.* ¶ 182.) McCollough allegedly mentioned Plaintiff's political activity, as well as his complaints against and records requests to the city. (*Id.* ¶¶ 183-84.) The Complaint then detailed what occurred on the scheduled court date:

> When Assistant Law Director McCollough arrived at the hearing, she characterized the citation William received as "just a noise" violation. McCollough also told William and his attorney that she could not guarantee that William would be treated in the future as leniently as he was being treated that day if he continued to cause problems "downtown."
>
> William ultimately agreed to a plea of no contest to a reduced charge of disorderly conduct. After William signed the plea form, the bailiff took it back to the judge

> to sign in chambers. The judge assessed a fine of $5.00, plus court costs of $94.00. William paid the fine a few days later.
>
> As William and his attorney were leaving the court room, McCollough called after them and said that William needed to watch himself and mind his own business going forward.

(*Id.* ¶¶ 188-92.)

In the Amended Complaint, Plaintiffs added facts regarding the mayor's chief of staff and the regular "cabinet" meetings about the members of the city's executive branch. (*See* Doc. 41-2 at PageID 665-68.) Among those facts, Plaintiffs alleged that the mayor's office directed Hemmons to enforce the Parking Ordinance against Fambrough, and that Hemmons in turn so directed then-police chief Gardner. (*Id.* at ¶¶ 120-22.) Hemmons apparently was not a necessary participant, however, as Plaintiffs specifically alleged that the mayor's chief of staff directly spoke to and pressured Gardner to take enforcement action against Plaintiffs. (*Id.* at ¶ 128.)

## II. **Law and Analysis**

Defendants moved to dismiss or, in the alternative, for summary judgment asserting immunity defenses. (Doc. No. 19 at PageID 158 & 165.) Defendants invoked (i) Ohio law immunities afforded to municipalities and their employees, (ii) absolute immunity for prosecutors, and (iii) qualified immunity for police officers. (*Id.*) Although Defendants assert that Plaintiff failed to state a claim upon which relief may be granted, the motion specifies that this is so because the claims purportedly are barred by the immunity defenses. (Doc. No. 19 at PageID 171.)

Plaintiff filed a motion under Rule 56(d) asserting a need for further discovery. (Doc. No. 26.) The Court generally is inclined to permit plaintiffs to engage in discovery prior to entertaining a summary judgment motion. The Court therefore reviews the Defendants' motion

under the standard of review for Rule 12, informed by precedent (discussed below) where courts have considered immunity defenses on a motion to dismiss.

### A. Standard of Review

Federal Rule of Civil Procedure 8(a)(2) provides that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "[W]hen a complaint adequately states a claim, it may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 n.8 (2007). The function of the Court in ruling on such a motion is not to weigh the evidence, nor to appraise the credibility of witnesses. *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995).

"To survive a motion to dismiss, the pleading must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.'" *Id.* "To state a valid claim, a complaint must contain direct or inferential allegations respecting all the material elements under some viable legal theory." *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007).

A court must accept factual allegations as true and draw all reasonable inferences in a plaintiff's favor. *Ryan v. Blackwell*, 979 F.3d 519, 524 (6th Cir. 2020); *see also Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999) (a court "need not accept as true legal conclusions or

unwarranted factual inferences"). "The plausibility of an inference depends on a host of considerations, including common sense . . . .'" *Ryan*, 979 F.3d at 524 (quoting *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013)). The Court need not accept as true "complaint allegations that are contradicted by public records and other evidentiary materials of which the Court may take judicial notice." *Lawson v. Lynch*, No. 4:15-CV-2140, 2017 WL 979115, at *4 (N.D. Ohio Mar. 14, 2017).

If a plaintiff pleads facts that prove a flaw in the claim or substantiate a defense, he may plead himself out of federal court. *See Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012); *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010); *O'Gorman v. City of Chicago*, 777 F.3d 885, 889 (7th Cir. 2015) ("A complainant can plead himself out of court by including factual allegations that establish that the plaintiff is not entitled to relief as a matter of law.").

Courts have held that absolute immunity for a prosecutor may be amenable to a motion to dismiss. *See, e.g., Jacobs v. Horn*, No. 91-4043, 986 F.2d 1421, 1993 WL 30499 (6th Cir. Feb. 9, 1993). The Sixth Circuit has held that a prosecutor's absolute immunity defense raised in a Rule 12 motion may be decided by taking the plaintiff's plausible allegations in the complaint as true. *See Watkins v. Healy*, 986 F.3d 648, 660 (6th Cir.), *as corrected on denial of reh'g en banc* (Mar. 16, 2021) (holding that absolute immunity was not available), *cert. denied*, 142 S. Ct. 348 (2021).

Further, the Supreme Court has affirmed dismissal under Rule 12 for other state actors based on qualified immunity. *E.g., Iqbal*, 556 U.S. at 680-82 (where plaintiff failed to plead unconstitutional actions); *Ashcroft v. al-Kidd*, 563 U.S. 731, 744 (2011) (where the law was not

clearly established). Guided by such decisions, the Sixth Circuit explained the interplay between a qualified immunity defense and a pre-discovery Rule 12 motion:

> Although a defendant ordinarily bears the burden of proof for an affirmative defense, a plaintiff bears the burden of overcoming qualified immunity. Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery. [O]fficers are entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time. [A court] can address these requirements in either order. If one is lacking, [a court] need not address the other.

*Crawford v. Tilley*, 15 F.4th 752, 760 (6th Cir. 2021).

Although some prior decisions indicated a preference against motions to dismiss in favor of summary judgment for qualified immunity, the Sixth Circuit explained in *Crawford* that "no such preference applies to the violation-of-a-constitutional-right prong. After all, asking whether there was a violation of a constitutional right resembles the Rule 12(b)(6) question – has the plaintiff pleaded facts that state a claim for relief in the complaint?" *Id.* at 764.

As to the second prong for evaluating qualified immunity, "the inquiry is nuanced. Dismissing for qualified immunity on this ground is sometimes difficult because the clearly established inquiry may turn on case-specific details that must be fleshed out in discovery." *Id.* at 765. However, "a complaint *distinguishable from . . . past cases on its face* will not often survive a motion to dismiss on qualified immunity grounds. This is especially true where granting relief to the plaintiff can only be done by recognizing a novel constitutional right." *Id.* at 766 (emphasis added). In sum, dismissal on qualified immunity grounds is proper when the "complaint establishes the defense." *Siefert v. Hamilton County*, 951 F.3d 753, 762 (6th Cir. 2020).

B. **Summary of Claims in the Complaint**

Count I was brought against the individual defendants and alleges retaliation in violation of the First Amendment. (Doc. No. 44 at ¶¶ 221-47.)

Count II was brought against the city of East Cleveland and alleges an official policy or custom aimed at retaliation in violation of the First Amendment. (*Id.* ¶¶ 248-62.)

Count III asserted that the Noise Ordinance and Permit Ordinance together work a prior restraint on speech that violates the First Amendment. (*Id.* ¶¶ 263-78.) Count III raised both a facial challenge to those ordinances as well as an as-applied challenge. (*Id.* ¶ 264; *id.* at PageID 49 ¶ E.)

Count IV asserted that the defendants selectively enforced the Noise and Parking Ordinances against Plaintiff in violation of the Equal Protection Clause of the Fourteenth Amendment. (*Id.* ¶¶ 279-86.)

Count V asserted that towing the step van was an unreasonable seizure in violation of the Fourth and Fourteenth Amendments. (*Id.* ¶¶ 287-301.) Plaintiff alleged that the tow was part of the retaliatory plan referenced in Counts I and II. (*Id.* ¶ 295.)

Counts III, IV, and V were brought against all defendants. (*Id.* at PageID 41, & 44-45.)

C. **Absolute Immunity for Prosecutors**

Defendants Hemmons and McCollough moved to dismiss arguing that prosecutors have absolute immunity. (Doc. No. 19 at PageID 158.) The determination of whether a defendant is entitled to absolute immunity is a question of law. *Spurlock v. Thompson*, 330 F.3d 791, 796 (6th Cir. 2003). The prosecutorial immunity grounds for dismissal have not changed from the original Complaint to the Amended Complaint, nor has Defendants' basis changed from their original motion to dismiss to the present motion. (*Compare* Doc. No. 19 *with* Doc. No. 47.)

To determine when the prosecutor is entitled to absolute immunity, courts employ a

functional approach.

> Prosecutorial immunity extends to a prosecutor's decision to file a criminal complaint and seek an arrest warrant and the presentation of these materials to a judicial officer. . . . The analytical key to prosecutorial immunity, therefore, is *advocacy* – whether the actions in question are those of an advocate.

*Holloway v. Brush*, 220 F.3d 767, 775 (6th Cir. 2000) (emphasis in original) (quotations and citations omitted); *Ireland v. Tunis*, 113 F.3d 1435, 1446 (6th Cir. 1997) ("A prosecutor's decision to file a criminal complaint and seek an arrest warrant and the presentation of these materials to a judicial officer fall squarely within the aegis of absolute prosecutorial immunity."); *see also Drake v. Howland*, 463 F. App'x 523, 525 (6th Cir. 2012) ("When a prosecutor acts as advocate for the state in deciding to prosecute and bringing the complaint, absolute immunity holds.").

"A government officer is entitled to absolute immunity for performing functions 'intimately associated with the judicial phase of the criminal process.' . . . [A] prosecutor is entitled to absolute immunity when he acts 'within the scope of his duties in initiating and pursuing a criminal prosecution.'" *Adams v. Hanson*, 656 F.3d 397, 401 (6th Cir. 2011) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976) (holding that a state prosecutor had absolute immunity for the initiation and pursuit of a criminal prosecution)); *but see Burns v. Reed,* 500 U.S. 478, 492-93 (1991) (holding that absolute immunity does not extend to prosecutor advising the police on investigative tactics); *Prince v. Hicks*, 198 F.3d 607, 612-13 (6th Cir. 1999).

"'Absolute prosecutorial immunity is not defeated by a showing that the prosecutor acted wrongfully or even maliciously, or because the criminal defendant ultimately prevailed on appeal or in a habeas corpus proceeding.'" *Grant v. Hollenbach*, 870 F.2d 1135, 1138 (6th Cir. 1989) (quoting M. Schwartz & J. Kirklin, *Section 1983 Litigation: Claims, Defenses, and Fees* § 7.8 (1986)). In *Grant*, a Section 1983 plaintiff challenged a county prosecutor's motive to prosecute

a child abuse case against him. *Id.* The plaintiff asserted that the prosecutor colluded and conspired with plaintiff's ex-wife to bolster her chances of securing custody. *Id.* The plaintiff also asserted that the prosecutor acted for self-serving political reasons. *Id.* at 1136. The Sixth Circuit explained that the decision to prosecute, "even if malicious and founded in bad faith, is unquestionably advocatory and at the heart of the holding in *Imbler*." *Id.* at 1138. "Construing [the prosecutor's] conduct in bringing an indictment, we find him absolutely immune despite the challenge to his motivation." *Id.*

"The motives of a prosecutor in initiating prosecution are irrelevant for purposes of immunity." *Holland v. Cty. of Macomb*, No. 16-2103, 2017 WL 3391653, at *2 (6th Cir. Mar. 17, 2017) (holding that district court properly dismissed § 1983 claim against prosecutor who "had immunity in choosing to initiate a prosecution against [plaintiff], regardless of alleged motive").[2] "[A]bsolute immunity provides complete protection from judicial scrutiny of the motives for the prosecutors' actions." *Ireland*, 113 F.3d at 1447 (holding that the prosecutor was entitled to absolute immunity notwithstanding alleged political motivations for his actions). "Absolute immunity protects a prosecutor from exposure to lawsuits, not just liability; '[t]he rationale for granting absolute immunity is as much to protect the relevant persons from a trial on their actions as it is to protect them from the outcome of the trial.'" *Grant*, 870 F.2d at 1137 (quoting *McSurely v. McClellan*, 697 F.2d 309, 315 (D.C. Cir. 1982)).

That a prosecutor was wrong in her probable cause assessment would not deprive her of absolute immunity. *See Drake*, 463 F. App'x at 528 (6th Cir. 2012) (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 274 n.5 (1993) ("The reason that we grant [absolute immunity] for

---

[2] Even assuming that a prosecutor was motivated by the potential civil ramifications of a criminal prosecution, that would not preclude absolute immunity as to the criminal prosecutorial actions. *See Eldridge v. Gibson*, 332 F.3d 1019, 1021 (6th Cir. 2003).

the latter function (malicious prosecution) is that we have found a common-law tradition of immunity for a prosecutor's decision to bring an indictment, whether he has probable cause or not.")); *see also Gregory v. City of Louisville*, 444 F.3d 725, 740 (6th Cir. 2006) ("The *Buckley* Court dismissed the argument that probable cause was a dividing line for potential liability attendant to prosecutors' actions.").

Finally, a supervising prosecutor enjoys absolute immunity where her subordinate attorney actually tried the criminal case that gives rise to the Section 1983 claim. *See generally Howell v. Sanders,* 668 F.3d 344, 353 (6th Cir. 2012); *Van de Kamp v. Goldstein*, 555 U.S. 335, 346-47 (2009). With that legal backdrop, the Court reviews the claims against two prosecutor Defendants.

### 1. Allegations Against McCollough and Hemmons

Hemmons is the Law Director for East Cleveland. (Doc. No. 44 at ¶¶ 17 & 42.) The law director for East Cleveland is appointed by the mayor and serves as the prosecuting attorney for the City and legal counsel for the mayor and other city officials. She had supervision and control over the law department. (*Id.* ¶ 41.)

McCollough is the Assistant Law Director. (*Id.* ¶¶ 18 & 44.) The assistant law director is designated by the law director to serve as the prosecuting attorney for the city. (*Id.* ¶ 43.) Together Hemmons and McCollough comprise the city's Law Department. (*Id*. ¶ 45.)

> On information and belief, Law Director Hemmons directed, approved, or ratified the use of the City's law department that she supervised to selectively enforce the Noise Ordinance against [Plaintiff], for the purpose of punishing and suppressing his core political speech against the incumbent mayor, not because the Noise Ordinance is routinely enforced against sound trucks used to broadcast community or political messages in East Cleveland. On information and belief, she also directed, approved, or ratified the selective enforcement of the Parking Ordinance against [Plaintiff], for the purpose of punishing and suppressing his core political speech against the incumbent mayor, not because the Parking Ordinance is

> routinely enforced against step vans that are parked in residential areas for reasons that have nothing to do with political speech.

(*Id.* ¶ 218.)

> Heather McCollough, acting as the City's representative in processing the Noise Ordinance complaint against [Plaintiff], acted beyond any legitimate scope of her authority by using her office to coerce [Plaintiff] into relinquishing his First Amendment rights.  She personally conditioned lenient treatment on [Plaintiff] "stand[ing] down" from his political advocacy and threatened that [Plaintiff] needed to watch himself and mind his own business going forward.
>
> Coupling a threat of prosecution with a demand to relinquish First Amendment rights was plainly outside McCollough's legitimate powers.

(*Id.* ¶¶ 226-27.)

> On information and belief, Law Director Willa Hemmons directed Heather McCollough and/or the police officers to retaliate against [Plaintiff], or at least was aware of their retaliatory actions and did nothing to stop them. In particular, given that Hemmons directly supervises McCollough in a two-person municipal law office, Hemmons must have known of McCollough's retaliatory actions and either expressly approved of them or willfully refrained from stopping them.

(*Id.* ¶ 228.)

In Count I, the Complaint alleged that Hemmons was aware of retaliatory conduct toward Plaintiff when he "filed the citizen's complaint against the police department for its retaliatory selective enforcement of the Parking Ordinance.  Nevertheless, [she] either expressly approved of or willfully refrained from stopping the retaliatory actions."  (*Id.* ¶ 232.)  Further, Hemmons directly supervised McCollough in a two-person municipal law office, so Hemmons must have known of McCollough's retaliatory actions and either expressly approved of them or willfully refrained from stopping them.  (*Id.* ¶ 228.)

In Count III, the Complaint alleged that any reasonable official would have known that the Noise and Permit Ordinances violated the First Amendment.  (*Id.* ¶ 278(b).)  In Count V, the Complaint alleged that Hemmons directed the police to enforce the Parking Ordinance and/or to tow the truck.  (*Id.* ¶ 300.)

### 2. Prosecutorial Functions

The key allegation against Hemmons was that she "directed, approved, or ratified the use of the City's law department that she supervised to selectively enforce the Noise Ordinance . . . [and] the Parking Ordinance against" Plaintiff.  (*Id.* ¶ 218.)  Those ordinances were not routinely prosecuted for conduct like Plaintiff's.  (*Id.*)  Plaintiffs claim that Hemmons and McCollough aimed to punish and suppress Plaintiffs' political speech.  (*Id.* ¶ 216.)

Enforcement of municipal ordinances and the decision to prosecute violations of those are quintessential prosecutorial functions for which Hemmons and McCollough enjoy absolute immunity.  Even where the *motive* for such prosecution is alleged to be discriminatory, retaliatory, or unconstitutional, the *function* remains one at the center of absolute immunity.  *See Grant*, 870 F.2d at 1138.

The Sixth Circuit's decision in *Shoultes v. Laidlaw*, 886 F.2d 114 (6th Cir. 1989) is instructive.  There the court held that a city attorney's decision to enforce a municipal zoning ordinance was a matter protected by absolute immunity.  That included enforcement decisions in the civil and criminal context.  *Id.* at 118 (citing *Salyer v. Patrick*, 874 F.2d 374, 378 (6th Cir. 1989) (absolute immunity extends to "quasi-prosecutorial functions")).

"[T]he duties of the prosecutor in his role as advocate for the State involve actions preliminary to the initiation of a prosecution and actions apart from the courtroom, and are nonetheless entitled to absolute immunity." *Higgason v. Stephens*, 288 F.3d 868, 877 (6th Cir. 2002) (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 272-73 (1993)) (granting motion to dismiss based on absolute immunity where the claim was based on prosecutor's professional evaluation of evidence); *Manetta v. Macomb Cty. Enf't Team*, 141 F.3d 270, 274 (6th Cir. 1998).  Statements made by a prosecutor in a court building off the record and just before or after a

hearing warrant absolute immunity when the comments relate to the proceedings. *See Adams v. Hanson*, 656 F.3d 397, 404-05 (6th Cir. 2011). Accordingly, immunity applies to a prosecutor's statements during plea bargaining, a hearing on an ordinance violation, or 'off the record' comments just before or after a hearing that relate to the decision to prosecute.

The key allegations against McCollough centered on plea negotiations and communications during and after a noise ordinance violation hearing. If McCollough made the remarks before and after the court appearance on the Noise Ordinance violation, as alleged in the Complaint, that may have been unwise. But plainly she was speaking in the role of an advocate and prosecutor. Absolute immunity applies, even assuming the ulterior motive was to intimidate Plaintiff or dissuade his First Amendment expression.

For the foregoing reasons, the Court holds that Hemmons and McCollough, who were sued in an individual capacity, are protected by the doctrine of absolute immunity. Their motion to dismiss on that basis is granted. The claims in Counts I, III, IV and V against Hemmons and McCollough (*see* Doc. No. 44 at ¶¶ 17-18), are dismissed.[3]

### D. Disqualification

The Sixth Circuit has held "that there is a need for sensitivity to the risk of conflict in § 1983 suits and that the judge and the parties have joint responsibility to guard interests that are actually threatened." *Gordon v. Norman*, 788 F.2d 1194, 1199 (6th Cir. 1986) (quotation and citation omitted). But there is no *per se* rule that prohibits law department attorneys from representing a city and its employees in a § 1983 action. *Id.*; *see also Coleman v. Frierson*, 607 F. Supp. 1566, 1572 (N.D. Ill. 1985) (cited with approval in *Gordon*). In fact, the presumption in

---

[3] To the extent that those defendants had policymaking authority, as the Complaint alleged, their actions in that regard still could render East Cleveland liable under *Monell*. Absolute immunity does not extend to the city.

Ohio is that law directors will do so – barring disqualification.  *See generally City of Cuyahoga Falls v. Robart*, 567 N.E.2d 987, 992 (Ohio 1991).  "The Court is cognizant of the potential for conflict of interest when counsel represents a municipality and its employees in § 1983 actions . . . .  However, disqualification of counsel is not an automatic remedy.  The Court must be ever vigilant; but must also carefully weigh the public interest in the judicial process against the private interests of each party."  *Eng'g & Mfg. Servs., LLC v. Ashton*, No. 1:07-CV-689, 2011 WL 13238209, at *2 (N.D. Ohio Sept. 9, 2011) (denying motion to disqualify).

"When considering whether to disqualify counsel 'courts must be sensitive to the competing public interests of requiring professional conduct by an attorney and of permitting a party to retain the counsel of his choice.'"  *DeCrane v. Eckart*, No. 1:16-CV-2647, 2019 WL 336790, at *2 (N.D. Ohio Jan. 28, 2019) (quoting *Hamrick v. Union Twp., Ohio*, 81 F. Supp. 2d 876, 878 (S.D. Ohio 2000)).

> While looking toward the Code of Professional Responsibility for guidance in considering the disqualification of counsel, the trial court should be mindful that disqualification is a drastic measure.  In fact, a violation of the Code of Professional Responsibility alone should not result in a disqualification, unless disqualification is found to be absolutely necessary.  Certainly, more is required than an allegation of an ethical violation.

*Centimark Corp. v. Brown Sprinkler Serv., Inc.*, 620 N.E.2d 134, 137 (Ohio Ct. App. 11th Dist. 1993) (citation omitted); *see also In re Valley-Vulcan Mold Co.*, 237 B.R. 322, 337 (6th Cir. BAP 1999) ("Motions to disqualify are viewed with disfavor and disqualification is considered a drastic measure which courts should hesitate to impose except when absolutely necessary." (quotation omitted)), *aff'd* 5 F. App'x. 396 (6th Cir. 2001).

> Acts that appear to violate the Code of Professional responsibility do not confer upon the trial court the unfettered discretion to disqualify.  An attorney should be disqualified only when there is a reasonable possibility that some specifically identifiable impropriety actually occurred and, in light of the interest underlying

> the standards of ethics, the social need for ethical practice outweighs the party's right to counsel of his own choice.

*Kitchen v. Aristech Chem.*, 769 F. Supp. 254, 257 (S.D. Ohio 1991) (quoting *United States v. Kitchin,* 592 F.2d 900, 903 (5th Cir. 1979)) (cited with approval in *Centimark*).

"Disqualification questions are intensely fact-specific, and it is essential to approach such problems with a keen sense of practicality as well as a precise picture of the underlying facts." *Gould, Inc. v. Mitsui Min. & Smelting Co.*, 738 F. Supp. 1121, 1124 (N.D. Ohio 1990) (cited with approval in *Centimark*).  Further, "disqualification of counsel in an action which has been pending for some time is but one of several alternatives and is a drastic measure which courts will not impose unless absolutely necessary."  *Id.* at 1124-25.

> Such motions are often made as tactical attempts to divest opposing parties of their counsel of choice.  Subsequently, in resolving these motions, judicial scrutiny of the facts is required to prevent unjust results. . . .  In ruling on a motion to disqualify, and in considering the possible sanctions available to punish unethical conduct, courts must remember that the court is not the only agency policing lawyers' conduct.  Other agencies are established to deal directly with that conduct, and there may be times when the sanctions of those agencies may be more appropriate than disqualification in the case before the court.

*Id.* (citations omitted).  "Unquestionably, the ability to deny one's opponent the services of capable counsel, is a potent weapon.  Confronted with such a motion, courts must be sensitive to the competing public policy interests of preserving client confidences and of permitting a party to retain counsel of his choice."  *Manning v. Waring, Cox, James, Sklar & Allen*, 849 F.2d 222, 224 (6th Cir. 1988).

Plaintiffs argued that the representation here "presents a conflict of interest materially identical to" that in *Wheatt v. City of E. Cleveland*, No. 1:17-CV-377, 2020 WL 2340229 (N.D. Ohio May 11, 2020).  (Doc. No. 46 at PageID 775.)  In *Wheatt*, there was a specific issue of indemnification following a jury verdict which presented something of a zero-sum scenario: either the city or the two individual defendants would have to pay the judgment amount.  *Id.* at

*1. The Court indicated "that it is completely improper for the City of East Cleveland to represent [the individual defendants] on this issue. . . . Because [the individual defendants] have a conflicting interest in whether to contest indemnification, East Cleveland's representation presents an obvious conflict of interest." *Id.*

The conflict of interest in *Wheatt* was realized, concrete, and palpable. That is not the case here. Moreover, Plaintiffs did not put forward evidence to support their assertion that Hemmons' and McCollugh's "personal interests are 'directly adverse' to the other individual defendants and to their employer and co-defendant, the City of East Cleveland." (Doc. No. 46 at PageID 775.) Hemmons and McCollough are no longer defendants subject to personal liability.

As for Plaintiffs' assertion of prejudice, the Court is unpersuaded. That Plaintiffs' counsel was permitted to communicate directly with an individual defendant(s) is not material harm. (*See* Doc. No. 46 at PageID 776.) In fact, a defendant always can elect to communicate directly with a plaintiff's attorney, so long as the defendant's attorney is apprised and does not object. Here, Plaintiffs admit that Hemmons consented to such communication. (*See id.*)

Plaintiffs specifically pointed to uncertainty regarding Hemmons' and McCollough's representation of Defendant Gardner. (*See id.*) In an Order dated June 9, 2023, the Court granted Hemmons' and McCollough's motion for leave to withdraw as counsel for Gardner. (*See* Doc. No. 32 and accompanying Order.)

As for potential discovery disputes or discovery rule violations, (*see* Doc. No. 46 at PageID 776), Plaintiffs may bring those to the attention of the Court if necessary in conformance with local and federal rules.

The motion to disqualify is denied.

### III. Conclusion

Defendants' motion to dismiss is GRANTED as to Hemmons and McCollough on absolute immunity grounds. The claims against Hemmons and McCollough in their individual capacities are DISMISSED.

The motion to strike (Doc. No. 51.) is DENIED. The motion to dismiss the amended complaint as to the remaining defendants (Doc. No. 47) stands and will be considered on its merits. The briefing deadlines set in the Court's May 16, 2023 Order (Doc. No. 43) remain in effect.

The motion to disqualify (Doc. No. 46) is DENIED.

**IT IS SO ORDERED.**

                                                                                   _____
                                                                                   BRIDGET MEEHAN BRENNAN
Date:  June 16, 2023                                           UNITED STATES DISTRICT JUDGE